The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between Springdale Fashions and plaintiff from July 6, 1992 until November 2, 1992.
3. The employer-employee relationship existed between Duplin Manufacturing and plaintiff.
4. CIGNA Insurance Company was the carrier on the risk for Duplin Manufacturing Company.
5. Zurich-American Insurance Company was the carrier on the risk for Springdale Fashions.
* * * * * * * * *
The Full Commission rejects the findings of fact by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a 44-year-old woman with a tenth grade education. In January 1992 she began working for Duplin Manufacturing Company as a sewing machine operator. Prior to working for Duplin plaintiff had been employed on a full-time basis as an industrial seamstress in a number of other garment manufacturing businesses.
2. During the entire time period of the claimant's employment with Duplin Manufacturing Company ("Duplin") from January 1992 to June 1992, the plaintiff was required to perform certain work-related tasks in her job as a sewing machine operator. Those work-related tasks required the plaintiff to perform specific repetitive tasks with both of her hands and arms on a repeated basis. When the plaintiff performed those same tasks, she engaged in the repeated and regular twisting or turning of both of her wrists. She was also required regularly and repeatedly to grasp the material she was working with, hold that material in position for sewing, and to use manually operated scissors hundreds of times daily to cut the material she was working with in order to perform her job with Duplin.
3. Plaintiff worked at Duplin until the company went out of business on June 2, 1992. In or about March 1992, the plaintiff began to have pain, tingling, and/or numbness in her hands which affected her ability to do her work. She complained to her supervisor on more than one occasion about these problems, but no change was made in the plaintiff's work tasks.
4. On May 15, 1992 the plaintiff was examined and treated by Physician's Assistant ("P.A.") David Reeves in the Goshen Clinic, Faison, North Carolina for the problems, tingling and pain in her hands. At that time, P.A. Reeves diagnosed her condition as bilateral carpal tunnel syndrome, and initiated iontophoresis treatment for that condition in both of the plaintiff's hands.
5. The diagnosis and treatment made and provided by P.A. Reeves to the plaintiff on May 15, 1992 was reviewed and approved by Dr. Al Verrilli. Dr. Verrilli was the licensed medical doctor on staff at the Goshen Clinic, with supervisory responsibility over P.A. Reeves.
6. Before the plaintiff began her employment with Duplin, the plaintiff had never experienced any numbness, tingling, or pain in her hands. The plaintiff's medical records at the Goshen Clinic from 1988 to January 1992 also indicate the same thing.
7. In July 1992, the plaintiff began her employment with Andover Togs, Inc. d/b/a Springdale Fashions ("Springdale"). That work also involved a job as a sewing machine operator.
8. During the entire time period of the claimant's employment with Springdale from July 6, 1992 to November 2, 1992, the plaintiff was required to perform certain work-related tasks in her job as a sewing machine operator. Those work-related tasks required the plaintiff to perform specific repetitive tasks with both of her hands and arms on a repeated basis. When the plaintiff performed those same tasks, she engaged in the repeated and regular twisting or turning of both of her wrists. She was also required regularly and repeatedly to grasp the material she was working with, to hold that material in position for sewing, and to use manually-operated scissors hundreds of times daily to cut the material she was working with in order to perform her job with Springdale.
9. Shortly before October 27, 1992 the plaintiff was examined by some medical students or a doctor at a free clinic in Warsaw, North Carolina concerning the plaintiff's complaints of the same symptoms of pain, numbness, and tingling in her hands that she had experienced for the first time in her employment with Duplin. The plaintiff experienced those same symptoms shortly after she began her new job with Springdale in July 1992. She complained of those symptoms to her family and to at least one managerial employee of Springdale while the plaintiff was still employed by Springdale. She also complained of these symptoms to another physician's assistant employed at the Goshen Clinic in the course of a visit to that clinic in which the plaintiff sought medical attention for those symptoms, and causally related those symptoms to her work duties with Springdale.
10. Shortly after she began her new job with Springdale the plaintiff was transferred to another department, due at least in part to the plaintiff's failure to meet the productivity standards set by Springdale for her initial position of employment with that company. After the plaintiff began work at her second position of employment with Springdale in that new department, the plaintiff continued to experience problems with meeting the productivity standards set by Springdale in her new department because of the continuous repetitive work which caused pain, numbness, and tingling in her hands. As a result of these continuing productivity problems related to the symptoms in her hands, the plaintiff received a number of written warnings from Springdale. Despite these warnings, the plaintiff was still not able to meet Springdale's productivity standards for her new department due to the continuing symptoms in her hands, and was therefore discharged on November 2, 1992.
11. The record indicates, and the Commission so finds, that persons who are employed on a regular basis to perform the type of work tasks that the plaintiff was employed by Springdale to perform are exposed to an increased risk of contracting cumulative trauma injuries or occupational diseases like carpal tunnel syndrome.
12. The record also indicated, and the Commission so finds, that there is an increased incidence of carpal tunnel syndrome and other cumulative trauma injury occupational diseases among persons who are employed on a regular basis to perform the type of work tasks that the plaintiff was employed to perform for Springdale, as against persons who are not employed in that type of employment.
13. The plaintiff gave accurate descriptions of her work duties to the physician's assistants and medical doctors who evaluated, examined or treated her. Those doctors included Dr. Richard Young and Dr. Samuel Moon. Those physician's assistants include David Reeves.
14. The opinions of Dr. Samuel Moon and P.A. Reeves concerning the nature and extent of the causal relationship between plaintiff's work tasks and her carpal tunnel syndrome while employed at Springdale are accepted as credible.
15. As a result of the plaintiff's continuing carpal tunnel syndrome and/or the continuing residual effects of the plaintiff's carpal tunnel syndrome in both her left and right hands, the plaintiff's ability to be gainfully employed since November 2, 1992 in any repetitive motion job has been greatly reduced.
16. Due to the plaintiff's continuing carpal tunnel syndrome and/or the continuing residual effects of the plaintiff's carpal tunnel syndrome in her right hand or in both her right and left hand, the plaintiff would benefit from additional medical procedure (s) and/or diagnostic testing, and has not reached maximum medical improvement with respect to either her right or left hand.
17. The medical treatment that the plaintiff received from Dr. Richard Young, P.A. Reeves and other medical professionals at the Goshen Clinic, and Dr. Samuel Moon, was necessary to effect a cure, provide relief, and/or would tend to lessen plaintiff's disability as a result of her development of carpal tunnel syndrome.
18. Based on the N.C. Workers' Compensation Act, the Full Commission finds that plaintiff was last injuriously exposed to the hazards of carpal tunnel syndrome while employed with Springdale Fashions.
19. In her employment with Springdale, the plaintiff's average weekly wage was $162.76, and her compensation rate is $108.51.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff has contracted carpal tunnel syndrome, an occupational disease, which is due to causes and conditions characteristic of and peculiar to her employment, and which is not an ordinary disease of life to which the general public is equally exposed outside of this employment. N.C.G.S. § 97-53 (13). Bookerv. Duke Medical Center, 297 N.C. 458 (1979).
2. The Full Commission concludes that while there was some evidence that a general relationship existed between the employment and employee's hand problem, plaintiff did not become disabled while working for Duplin Manufacturing Company. Therefore, plaintiff is not entitled to workers' compensation payments for an occupational disease from Duplin Manufacturing Company. N.C.G.S. § 97-53 (13); Booker v. Duke Medical Center,297 N.C. 458 (1979), Anderson v. Northwestern Motor Company, 233 N.C. 372
(1951).
3. The plaintiff was last injuriously exposed to the hazards of carpal tunnel syndrome while employed with Springdale Fashions. The bilateral carpal tunnel syndrome which the plaintiff developed while employed by Springdale Fashions was an occupational disease which arose out of and in the course of plaintiff's employment with Springdale. N.C.G.S. § 97-53 (13). N.C.G.S. 97-57.
4. As a result of developing the occupational disease of bilateral carpal tunnel syndrome, the plaintiff is entitled to receive from Springdale Fashions payment of temporary total disability benefits at the rate of $108.51 per week from November 2, 1992 and continuing until she no longer remains temporarily totally disabled or becomes gainfully employed or is otherwise ordered by the Industrial Commission. N.C.G.S. § 97-29.
5. Pursuant to N.C.G.S. § 97-25 and N.C.G.S. § 97-2 (19), the plaintiff is entitled to further medical treatment and medical care prescribed for the plaintiff's bilateral carpal tunnel syndrome to effect a cure or give relief to the pain she continues to experience in her hands as a result of the bilateral carpal tunnel syndrome that she contracted in her employment with Springdale.
6. The plaintiff is entitled to payment of the costs of a single copy of the transcript of the depositions of Drs. Moon and Young, and of the transcript of physician's assistant Reeves pursuant to N.C.G.S. § 97-80 and N.C.G.S. § 6-20, and Sealey v.Grine, 115 N.C. App. 343, 444 S.E.2d 632, 635 (1994).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim against Duplin Manufacturing Company is DENIED.
2. That the defendants, Andover Togs, Inc. d/b/a Springdale Fashions and Zurich-American Insurance Company shall pay the plaintiff temporary total disability compensation at the rate of $108.51 per week beginning November 2, 1992 and continuing until she no longer remains temporarily totally disabled, or becomes gainfully employed or is otherwise ordered by the Industrial Commission;
3. Defendants Andover Togs, Inc. d/b/a Springdale Fashions and Zurich-American Insurance Company shall pay all medical expenses incurred or to be incurred by plaintiff for the treatment of the occupational disease from November 2, 1992 and continuing until treatment has provided relief, effect a cure, and/or would tend to lessen plaintiff's disability.
4. An attorney fee of 25 percent of the above compensation is approved for plaintiff's attorney and shall be deducted from the compensation above and paid directly to plaintiff's attorney by the carrier. Also, plaintiff's attorney is to receive every fourth check of the compensation awarded herein.
5. The defendants are entitled to a credit of all unemployment compensation paid to plaintiff, if any.
6. Defendants' Motion to Dismiss on the grounds of plaintiff not filing a Form 44 is HEREBY DENIED.
FOR THE FULL COMMISSION
 S/ ________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CMV/cnp/mj 8/29/95